IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NABYUNISSA BANGOURA,<br><br>HADJA FRANKLIN, and<br><br>TANZILUDIN BANGURAH,<br><br>*Defendants*. | No. 1:23-CR-121<br><br>The Honorable Anthony J. Trenga<br><br>Hearing Date:  October 18, 2023 |

### THE UNITED STATES' OPPOSITION TO DEFENDANT HADJA FRANKLIN'S MOTION TO CHANGE VENUE

Defendant Hadja Franklin moves to have her case transferred to the Middle District of Pennsylvania ("M.D. Pa.") under Federal Rule of Criminal Procedure 21(b).[1]  But the *Platt* factors, which courts use to assess a motion to transfer, weigh in favor of keeping the trial in the Eastern District of Virginia ("E.D.V.A.").  Most of the expected witnesses reside or work in E.D.V.A. or nearby states, and Franklin has failed to identify a single defense witness who lives in Pennsylvania.  Franklin's counsel is in E.D.V.A., and the docket conditions weigh in favor of keeping the trial as currently scheduled, instead of transferring it to the congested docket of M.D. Pa. and delaying the trial.  Finally, granting Franklin's motion would amount to severance, which would require two trials with essentially identical evidence, resulting in unnecessary expense on the government, burden on the witnesses, and waste of judicial resources.

---

[1] Because defendant Nabyunissa Bangoura has "joined" Franklin's motion, *see* ECF No. 53, this brief in opposition refers to "Franklin's" motion, except where discussing Bangoura's medical condition.

Franklin and Bangoura contend that their health concerns weigh in favor of transfer, but courts rarely grant transfer for a defendant's health concerns where, as here, the defendant's health concerns do not impact their ability to present a defense at trial. And although Franklin contends that she cannot afford to travel to E.D.V.A. and stay at a hotel during trial, this Court has found that merely shifting the cost of trial to the government does *not* weigh in favor of transfer.

At bottom, the *Platt* factors weigh in favor of keeping the trial in E.D.V.A., and the Court should deny Franklin's motion.

## BACKGROUND AND PROCEDURAL HISTORY

In 2021, the Federal Bureau of Investigation's Washington Field Office began investigating a prolific darknet vendor using the moniker "MonPham," which sold counterfeit oxycodone and Xanax on numerous darknet marketplaces and the encrypted application Wickr. The FBI, Food and Drug Administration—Office of Criminal Investigations, and the United States Postal Inspection Service (all of whom are based in the Washington metro area), investigated the conduct and identity of the individuals behind the MonPham accounts. Because MonPham was operating on the darknet, investigators did not know where the defendants were located when they began the investigation. Ultimately, the investigation pointed to Franklin and her co-defendants, who were operating out of their residence in Northeast Pennsylvania.

The government made numerous controlled purchases from the defendants, some of which were mailed to E.D.V.A. In chat messages with the FBI, the defendants confirmed that they were manufacturing the pills themselves.

The FBI used blockchain analysis to identify the defendants' IP address, which allowed them to identify the defendants and their residence. The defendants used a particular brand of packaging, primarily sold at Walmart, when they mailed drugs. The FBI was able to obtain

surveillance footage from a local Walmart showing defendant Tanziludin Bangurah buying that packaging in bulk. The FBI found that defendant Hadja Franklin purchased binding agents on Amazon.com under her name. The FBI also discovered that some internet traffic associated with MonPham was originating in Sierra Leone during a time period that defendant Nabyunissa Bangoura was in that country.

Investigators surveilled the defendants' residence in summer 2022. In August 2022, agents witnessed Tanziludin Bangurah drop packages in two different blue collection boxes near the residence. Agents sealed-off the collection boxes before anyone else could use them, noticed that the packages at the top of the pile resembled the packaged mailed by MonPham, obtained warrants, and discovered drugs. One of the packages was destined for a customer in California; agents approached that individual, who confirmed the purchase.

Shortly thereafter, agents observed defendant Nabyunissa Bangoura and his now-wife outside the residence with an infant child. Because agents suspected the residence contained fentanyl and were concerned about the safety of the child, agents obtained a search warrant for the residence. Inside, they found a home laboratory, including a pill press, vacuum sealer, safety equipment, and a substantial quantity of drugs. Agents also obtained Walmart surveillance footage showing Tanziludin Bangurah purchasing the vacuum sealer, as well a text message from Franklin explaining that he should buy a replacement for the previous vacuum sealer they were using, which had broken.

Agents also found drug ledgers strewn around the house, as well as login credentials for several MonPham accounts. Notably, the drug ledgers included purchase records for several of the controlled purchases made by the government—that is, they listed the undercover name and address used for the purchase, as well as the quantity and type of drugs sold. Pursuant to a search

warrant, agents used the login credentials to access MonPham accounts on several markets.

Agents seized numerous electronic devices, including phones, from the residence. When the government was able to access those devices, investigators found a vast array of messages—largely between Franklin and Nabyunissa Bangoura—talking about the day-to-day operation of the conspiracy. Among other things, they talked about how to "mix" their drugs, the dangers of fentanyl, how many orders they received each day, whether Nabyunissa had "washed" the proceeds, and which collection boxes Tanziludin Bangurah should use.

On the day of the search warrant, Franklin gave a recorded statement to investigators, in which she disclaimed knowledge of the drug lab in her residence or any drug activity. But because authorities in Pennsylvania took custody of Nabyunissa's young son, she later attempted to explain-away the situation in a series of text messages to the lead case agent. When he did not respond, she began emailing the Pennsylvania social worker assigned to her son's case. In sum, and to the extent the government understands her ever-shifting story, Franklin claims that she was not engaged in a drug conspiracy but rather research for a screenplay she is writing about the online drug trade. She says that the lab and accounts were set-up by an individual named John (at various points, she has identified the individual as "Red" or "John Whyte," while other times she claims not to know his last name) who she contacted only using a burner phone that the FBI did not find during execution of the search warrant but she has since discarded. She has also claimed that she previously worked as an FBI source while living in New York; there is no record of her ever being an FBI source. Franklin also gave a post-arrest statement in which she further elaborated on her explanation.

The defendants were charged by criminal complaint and released pending trial. On July 13, 2023, a grand jury returned a one-count indictment charging the defendants with one count of

conspiracy to distribute 40 grams or more of a mixture containing fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 846.  ECF No. 39.  Trial is scheduled for November 6, 2023.  On September 22, 2023, Franklin filed a motion to change venue under Federal Rule of Criminal Procedure 21(b).  ECF No. 49.  Bangoura subsequently joined Franklin's motion, adopting the bulk of her arguments and noting his own medical condition—a back contusion sustained at work.  ECF No. 53.  The United States submits this brief in opposition.

## ARGUMENT

Franklin has failed to carry her burden to establish that transfer to M.D. Pa. is appropriate for her case.  The defendants' trial counsel is in E.D.V.A.  A majority of the government's witnesses are in E.D.V.A. or in the Washington metro area.  Franklin has failed to identify any defense witness that lives in M.D. Pa.  The docket conditions of E.D.V.A. support keeping trial here because trial is already scheduled in E.D.V.A., and E.D.V.A. resolves criminal cases faster than M.D. Pa.  Further, granting Franklin's motion would amount to a severance, which would require the government to put on two nearly identical trials in two jurisdictions, resulting in additional expense on the government, inconvenience to witnesses, and burden on the judiciary.  Finally, Franklin has failed to establish that her two primary concerns—the inconvenience and expense of traveling to E.D.V.A. and her health concerns—warrant transfer.  As a result, the Court should deny Franklin's motion.  For the same reasons, the Court should also deny Bangoura's motion.

I.      **Legal Standard.**

Franklin does not and cannot dispute that venue is legally proper in E.D.V.A. "In a conspiracy case, a prosecution may be brought in any district in which any act in furtherance of the conspiracy was committed, and proof of acts by one co-conspirator can be attributed to all members of the conspiracy." *United States v. Smith*, 452 F.3d 323, 335 (4th Cir. 2006) (citation omitted). "It is well-accepted that there may be more than one appropriate venue, or even a venue in which the defendant has never set foot, so long as it meets the relevant constitutional and statutory requirements." *United States v. Johnson*, 510 F.3d 521, 524 (4th Cir. 2007) (internal quotation and citation omitted).

Rather, Franklin contends that M.D. Pa. is a more convenient venue than E.D.V.A. Under Federal Rule of Criminal Procedure 21(b), a defendant may move to transfer venue "to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). Courts weigh the following *Platt* factors to determine whether to grant a motion to transfer for convenience: "(1) location of corporate defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer." *Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240, 243-44 (1964).

"The defendant bears the burden of demonstrating that a transfer is appropriate." *United States v. Offill*, No. 1:22-CR-152-1 (RDA), 2023 WL 2385608, at *7 (E.D. Va. Mar. 6, 2023) (citations omitted). "For a defendant to succeed on a [Rule 21(b) motion to transfer], the defendant must demonstrate that prosecution of the case in the district where the count was properly filed would 'result in a substantial balance of inconvenience' to the defendant." *Id.* (citation omitted).

Franklin has failed to carry her burden of establishing that the *Platt* factors weigh in favor of transferring the case to M.D. Pa. To the contrary, the factors favor trial in E.D.V.A.

**II.     The *Platt* factors weigh in favor of keeping the trial in the Eastern District of Virginia.**

**1.  Location of the Defendant Should be Given Little Weight.**

Franklin argues that transfer is appropriate because all the defendants live five hours away from the courthouse by car, and it would be a burden to travel to the E.D.V.A.[2] ECF No. 49 at 4. But this Court has recognized that "[c]riminal defendants have no right to be tried in their home district, 'nor does the location of the defendant's home have independent significance in determining whether transfer to that district would be in the interests of justice.'" *United States v. Offill*, No. 1:09-CR-134, 2009 WL 1649777, at *3 (E.D. Va. June 10, 2009) (quoting *United States v. McManus*, 535 F.2d 460 (8th Cir. 1976)). "Indisputably, any trial will result in some inconvenience to the parties, but mere inconvenience does not mean that a transfer is required in the interests of justice." *Id.* (quoting *United States v. Hays*, 1997 WL 34666, at *2 (E.D. Pa. 1997)). Therefore, Franklin's mere inconvenience of traveling to E.D.V.A. should be given very little weight. *See United States v. Farkas*, No. 1:10CR200 LMB, 2010 WL 3835110, at *2 (E.D. Va. Sept. 24, 2010), *aff'd*, 474 F. App'x 349 (4th Cir. 2012) ("Although the location of the

---

[2] Franklin's arguments regarding the cost of such travel are discussed below under No. 6. Her arguments regarding the impact on her health are discussed below under No. 10.

7

defendant is a *Platt* factor supporting transfer, it is not a dispositive factor, and [the defendant] has cited no binding authority to suggest that the defendant's location should weigh more heavily than the other *Platt* factors.").

### 2. Location of Possible Witnesses Weighs Against Transfer.

***Franklin's Witnesses.*** Franklin contends that "ALL" potential defense witnesses "would be from the Tobyhanna area[,] and therefore keeping venue in Alexandria would be a major inconvenience to them to travel the five hours to come to court every day for trial." ECF No. 49 at 5. But Franklin does not name a single potential witness. "Generally, a naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer. … Defendants must offer specific examples of witnesses' testimony and their inability to testify because of the location of the trial. … the court must rely on concrete demonstrations of the proposed testimony." *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 456-57 (S.D.N.Y. 1997) (collecting cases) (internal quotation marks omitted); *see also Farkas*, 2010 WL 3835110, at *3 (same). Moreover, it is unclear why these unnamed witnesses would need to travel to court every day for trial (even during the prosecution's case-in-chief). And any expenses for these witnesses would be covered by the government, which undermines any financial burden regarding the unnamed witnesses. *See* 28 U.S.C. § 1825; Fed. R. Crim. P. 17(b). As a result, Franklin has not carried her burden to demonstrate that there are any witnesses that would be burdened by a trial in the E.D.V.A.

***Government's Witnesses.*** Absent stipulations, the government expects to call approximately 21 witnesses. Approximately 13 of those witnesses are government employees based in E.D.V.A., Washington, D.C., or Maryland. Five of the remaining witnesses are based neither in our area or in Pennsylvania: one is an FDA chemist based on Ohio, three are corporate

representatives, and the other is a civilian who was the intended recipient of a drug package mailed by Tanziludin Bangurah in August 2022. Those witnesses, to the extent their testimony is not rendered unnecessary by stipulations, are indifferent to whether the trial takes place in E.D.V.A. or M.D. Pa. Three witnesses are based in Northeast Pennsylvania. They are two Postal Inspectors who helped with the investigation, as well as the social worker to whom Franklin wrote pertinent emails.

In sum, the vast majority—18 out of 21 potential witnesses—are *not* based in Northeast Pennsylvania, and 12 of them are based in the Washington metro area. Therefore, [t]he potential inconvenience to prosecution witnesses weighs against transfer." *Offill*, 2009 WL 1649777, at *3 ("The investigatory agents who conducted the majority of interviews are located in Washington, DC and Virginia, so a transfer of venue to Texas would result in increased travel and housing costs for these witnesses.").

**3. Location of Events Likely to be at Issue is Neutral.**

Franklin contends that "[a]ll of the locations of events in this case are in Pennsylvania," and she provides various examples of the defendants' conduct in Pennsylvania. ECF No. 49 at 5. While Franklin is correct that much of the defendant's conduct occurred in Pennsylvania, Franklin only tells half the story. The other half of the story concerns the government's investigation into the defendants, including computer analysis and online controlled buys, which all took place took place within E.D.V.A. or in neighboring states. Further, the defendants sent controlled buys, as well as other packages, to E.D.V.A. on more than a dozen occasions.

Franklin admits that the allegations in this case describe the conspiracy as sending narcotics "all over the United States." *Id*. Courts have recognized that where defendant's conduct is national in scope, the location of events at issue favors neither side. *See United States v. Flom*, No. 14-CR-

507 RRM, 2015 WL 6506628, at *6 (E.D.N.Y. Oct. 27, 2015) ("[W]ith clear ties to both the Eastern District of New York and the Southern District of Florida, the location of events at issue favors neither Flom nor the government."); *Spy Factory*, 951 F. Supp. At 457 ("Because the criminal activity that was alleged to have occurred in this case was concededly national in scope, the location of the events at issue favors neither side.") (citing cases). As a result, the Court should weigh this factor neutrally.

    4.  **Location of Relevant Documents and Records is Neutral.**

Franklin states that this factor does not "weigh heavily one way or the another." ECF No. 49 at 5. The government agrees because it would be feasible to transport the evidence from E.D.V.A. to Pennsylvania. That said, the government intends to bring certain items to court to aid the jury—including drugs, packaging, drug ledgers, the pill press, the vacuum sealer, and electronics—which are in evidence at the Resident Agency of the Washington Field Office.

    5.  **Potential for Disruption of Defendant's Business if Transfer is Denied is Neutral.**

Franklin is not employed. *Id.* While Bangoura appears to be employed, travel to E.D.V.A. for trial is not a sufficiently significant disruption to merit transfer. Therefore, the Court should weigh this factor neutrally.

    6.  **Expense to the Parties Does Not Support Transfer.**

Franklin contends that this multi-day trial is expected to last "for ten days to two weeks," which would require Franklin to reside in a hotel. *Id.* at 4. According to Franklin, such a cost would be "more than the defendants can afford." *Id.* As an initial matter, the government expects that trial will last three to five days—not ten days to two weeks. Further, there are numerous economic hotel options within two miles of the courthouse, which offer rooms for less than $75 a

night.[3]  Although Franklin has qualified for court-appointed attorneys, she has not provided the Court with any facts to support the contention that she (or any other defendant) are unable to afford a room for a three to five day trial with the available options near the courthouse.  As a result, "Defendant's conclusory statements that certain of the *Platt* factors favor transfer generally lack the specificity required to carry his burden on this motion." *United States v. Mata*, No. CIV.A. 15-68, 2015 WL 5552658, at *6 (E.D. La. Sept. 17, 2015).

Moreover, transferring this case would result in additional costs to the government.  Franklin is represented by CJA counsel, which means that "the Government is not only paying for the prosecution, but is currently covering [the defendant's] litigation expenses under the Criminal Justice Act, 18 U.S.C[.] § 3006." *Farkas*, 2010 WL 3835110, at *5.  Therefore, if the case was transferred, the "new court-appointed counsel in [the transferee jurisdiction] would have to expend significant efforts and resources to become as familiar with the case as Defendant's current counsel already is—this unnecessary duplication of cost and resources will ultimately be borne by the taxpayers." *Offill*, 2023 WL 2385608, at *9.  "While it may cost Defendant more to go to trial in this District, it would cost the Government more if this case were to be transferred.  Merely shifting the burden of expense from one party to another is not a good reason for transfer." *United States v. Logan*, No. 1:12CR506 JCC, 2013 WL 1450547, at *3 (E.D. Va. Apr. 4, 2013) (citation and internal quotation marks omitted).  Therefore, Franklin's unsupported contention that it is too expensive to go to trial in E.D.V.A. does not support transfer.

---

[3] *See, e.g.,* Days Inn by Wyndham Alexandria South, https://www.wyndhamhotels.com/days-inn/alexandria-virginia/days-inn-alexandria-south/rooms-rates?brand_id=DI&checkInDate=11/5/2023&checkOutDate=11/10/2023&useWRPoints =false&children=0&iata=00093796&adults=1&rooms=2&loc=ChIJ8aukkz5NtokRLAHB24Ym9dc&sessionId=1695821959 (advertising rooms for $71.34 per night form November 5 to November 10) (last visited Oct. 3, 2023) (advertising rooms for $70.47 per night).

### 7. Location of Defense Counsel Weighs Against Transfer.

All of the defendants' counsel are located in Northern Virginia. This factor, therefore, weighs against transfer.

Franklin argues that she could easily obtain a new CJA-appointed counsel or Public Defender if the case was transferred to M.D. Pa. But the question presented to the Court is whether prosecution in E.D.V.A. "would 'result in a substantial balance of inconvenience' to the defendant," *Offill*, 2023 WL 2385608, at *7, not—as Franklin contends—whether prosecution in M.D. Pa. would also be possible.

Further, transferring the case to M.D. Pa. and requiring Franklin to obtain new counsel would only serve to delay a trial while Franklin's new counsel becomes familiar with the case, which weighs against transfer.[4] *United States v. Yates*, No. 3:19-CR-266(AWT), 2020 WL 3316053, at *6 (D. Conn. June 18, 2020) (denying transfer, in part, because of potential delay if the defendant had to obtain new appointed counsel).

### 8. Relative Accessibility of Place of Trial is Neutral.

The government agrees with Franklin that the court should weigh the relative accessibility of the place of trial neutrally.

### 9. Docket Conditions in Each District Weighs Against Transfer.

Franklin contends that transfer is appropriate because E.D.V.A. "has one of the busiest dockets," while M.D. Pa. "has a much lighter docket." ECF No. 49 at 6. While there is no doubt that E.D.V.A. has a busy docket, Franklin's assertion is not backed up by the facts. According to

---

[4] Delay of this litigation would undermine the public's interest in a speedy trial. *See Zedner v. United States*, 547 U.S. 489, 501 (2006) (explaining that the Speedy Trial Act was "designed not just to benefit defendants but also to serve the public interest by, among other things, reducing defendants' opportunity to commit crimes while on pretrial release and preventing extended pretrial delay from impairing the deterrent effect of punishment").

the most recent Federal Court Management Statistics from June 2023,[5] during the 12-month period ending on June 30, 2023, E.D.V.A. had 335 pending cases per judge, while M.D. Pa. had nearly double that amount—618 pending case per judge.  Perhaps because of the volume of cases per judge, the median time from filing to disposition in criminal felony cases was 19 months in M.D. Pa. compared to only 7.7 in E.D.V.A.  Simply put, E.D.V.A. is the more efficient jurisdiction for the disposition of this criminal case.

Moreover, the trial in this case is currently scheduled to begin on November 6, 2023.  If Franklin's motion is granted, it is likely that Franklin—and her new counsel—would require a continuance to prepare for trial in Pennsylvania.  Such a continuance would almost certainly delay this trial beyond November.  Therefore, this factor weighs against transfer.  *See Offill*, 2023 WL 2385608, at *9 ("[T]he Court anticipates that if the instant motion is granted, Defendant may need to pursue a series of continuances to allow time for new counsel to become familiar with the case, thus delaying the trial and potential restitution to the alleged victims of the offenses. Consequently, this factor weighs slightly against transfer.").

**10. Special Elements that Might Affect the Transfer Weigh Against Transfer.**

***Franklin's Health.***  Franklin represents that she underwent an arthroscopic surgery on her left knee in August 2023.  ECF No. 49 at 2.  As a result, Franklin contends that traveling to and from Pennsylvania is a severe burden and because, during trial, Franklin would have a prolong stay away from her local doctors and treating surgeons.  *Id.* at 6-7.  As discussed above, this trial is expected to last three to five days—not the ten days to two weeks that Franklin posits.  And Franklin has failed to specify how time away from her local doctor or treating surgeon for a period of three to five days would pose a danger to her: she has not identified any scheduled medical

---

[5] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0630.2023.pdf

13

appointments or procedures that cannot be rescheduled. Further, as the Court is aware, many aspects of healthcare can occur via telehealth, which would permit continuity of care for Franklin, and there is no shortage of world-class medical professionals in Northern Virginia should any issues arise while Franklin is here for trial. As elsewhere, Franklin's conclusory statements are insufficient to carry her burden.

Moreover, "[c]ourts rarely transfer criminal trial because of a defendant's health." *United States v. Bowdoin*, 770 F. Supp. 2d 133, 140 (D.D.C. 2011). As the court explained in *Bowdoin*:

> *Platt* identified issues that would impact a defendant's ability to present a defense at a criminal trial. Each of its factors speaks to the rights of a defendant to participate personally—to be represented by counsel of his choice, to present witnesses in his defense, to challenge the Government's evidence, and to obtain a speedy trial. These are the kinds of rights every criminal defendant enjoys. The catch-all tenth factor—"any other special elements which might affect the transfer"—should be read in kind. That is, when a "special element" such as ill health would prevent a defendant from full participation at his own trial, a transfer should be granted.

*Id.* at 142.

Franklin has not explained—much less proven—that her medical condition will have any impact on her ability to be represented by counsel, to present witnesses, to challenge evidence, or to obtain a speedy trial. As a result, this consideration does not weigh in favor of transfer.

On October 2, Bangoura filed notice to join Franklin's motion to transfer venue, based on a doctor's advice that he should "limit driving" to one hour "of continuous driving" because of a "lower back contusion." *See* ECF Nos. 53, 53-1. The doctor's advice was given on September 9, 2023 and does not indicate how long Bangoura's driving restrictions should remain in place. Notably, the trial will occur nearly two months after this diagnosis, which provides time for Bangoura to recover. Further, as a practical matter, Bangoura could travel to E.D.V.A. by taking breaks every hour, consistent with the advice from his doctor. Therefore, the Court should reject Bangoura's motion for the same reasons outlined above: his medical advice does not preclude him

traveling to E.D.V.A. for trial or from participating in his defense.

***Severance of Franklin and Bangoura's Case.*** The Court should consider that the result of granting Franklin or Bangoura's motion would be, in effect, a severance from Bangurah. If transferred, these two cases would be virtually identical because the underlying charge—a conspiracy—would require the government to put on evidence related to the multiple co-defendants in each case. Requiring the government to put on multiple trials with overlapping evidence weighs against transfer because of the expense to the government, inconvenience to the witnesses, and burden on the judiciary. *See United States v. Morrison*, 946 F.2d 484, 489-90 (7th Cir. 1991) ("Because of the number of defendants involved, to have transferred [the moving defendant's] trial—essentially granting him a severance—would have given rise to a 'multiplication of litigation' resulting in great inconvenience to the witnesses involved as well as considerable expense to the government."); *Offill*, 2009 WL 1649777, at *5 ("[S]ince all of these prosecutions arise from the same conspiracy … disposing of the cases in a unified manner is advisable.").[6]

---

[6] Further, the same concerns that weigh against severance that are discussed in the United States' opposition to Defendant Tanziludin Banguhrah's Motion for Severance likewise weigh against granting Franklin and Bangoura's motion. *See, e.g., United States v. Brown*, 4:13CR110, 2014 WL 31454 (E.D. Va. Jan. 3, 2014) ("Not severing the charges has the additional benefit of conserving judicial resources: witnesses will not be required to testify to substantially the same information at multiple trials, only one jury would have to be impaneled, and attorneys for both sides can consolidate their time and efforts into one case.").

15

## CONCLUSION

Franklin has failed to carry her burden to demonstrate that transfer of her case to M.D. Pa. is warranted. In fact, the *Platt* factors weigh against transfer. As a result, the Court should deny Franklin's motion.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:     */s/ Gavin R. Tisdale*
Philip Alito
Gavin R. Tisdale
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone:    703-299-3700
Fax:            703-299-3890

## CERTIFICATE OF SERVICE

I hereby certify that, on October 6, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically generates a Notice of Electronic Filing to counsel of record in this case.

*/s/ Gavin R. Tisdale*
Gavin R. Tisdale
Assistant United States Attorney